J-S21021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NICOLE R. BREDBENNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL HALL, SR. | : | |
| | : | |
| Appellant | : | No. 19 MDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Lebanon County Domestic Relations at
No(s):  2015-5-0577,
PACSES 257115382

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:            **FILED: AUGUST 15, 2023**

Appellant Michael Hall, Sr., appeals from the order finding him in civil contempt of court for failing to comply with a child support order.  Appellant argues that the trial court erred in imposing a $2,000 purge condition without determining whether Appellant had the ability to pay at the time he was found in contempt of court.  After careful review, we vacate the trial court's order and remand for further proceedings.

The trial court summarized the relevant facts and procedural history of this case as follows:

> [Appellee] Nicole Bredbenner and [Appellant] are the parents of three (3) children.  [Appellant] is currently court-ordered to pay $340 per month to support his three minor children.  This

_____

[*] Retired Senior Judge assigned to the Superior Court.

represents an . . . obligation of [approximately] $113 per month per child.

[Appellant] has been a frequent visitor to Child Support Contempt Court. Since 2015, [the trial court] has been primarily responsible for adjudicating contempt petitions involving [Appellant].

\* \* \*

On November 15, 2022, [Appellant] appeared in court without employment. The Domestic Relations Office reported that [Appellant] had started a job at Henry Molded Corporation [(Henry Molded)]. However, he lost the job shortly after it started. [Appellant] stated that he was hired under false pretenses. He claimed that he was promised a job as a forklift operator but was instead afforded a job that he was not capable of performing. . . . [The trial court] appointed a public defender to represent [Appellant. The trial court] scheduled a factual hearing to determine the circumstances under which [Appellant] lost his job at Henry Molded . . . .

[Appellant] appeared once again on November 29, 2022. At this hearing, Corey Tracey of Henry Molded [] provided testimony. He stated that [Appellant] was hired as an inspector and not as a forklift operator. He further stated that Henry Molded had no forklift jobs available. Mr. Tracey indicated that [Appellant] appeared for work on October 1, 2022 at 9:30 [p.m.] At approximately 11:30 [p.m.], [Appellant] wanted to take a smoke break. When told that he could not do so, [Appellant] walked off the job. He never returned.

At the time of the November 29, 2022 hearing, [Appellant] provided medical documentation that was dated [from] 2016. Even this documentation did not corroborate a claim of disability. . . . [The trial court] noted that [Appellant] made no voluntary [child support] payments within one (1) year. [The trial court] declared [Appellant] to be in contempt for failing to pay his [child] support. [The trial court] sentenced him to serve 100 days in the Lebanon County Prison. [The trial court] also established a purge amount of $2,000.

Trial Ct. Op., 1/26/23, at 2, 4-6 (formatting altered).

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claim.

On appeal, Appellant raises the following issue for our review:

Did the [trial] court err when it gave [Appellant] a purge condition, following a finding of civil contempt, where the record did not prove beyond a reasonable doubt that [Appellant] had the present ability to comply?

Appellant's Brief at 4.[1]

Appellant contends that the trial court erred when it set a $2,000 purge amount without determining whether Appellant had the present ability "to comply with the purge conditions set by the [trial] court for purging himself of his contempt." Appellant's Brief at 13. Appellant requests that this Court vacate the trial court's order and remand the case with an order that a purge amount reflects Appellant's present ability to pay. *Id.* at 20.

In reviewing Appellant's claim, we are guided by the following principles:

Our scope of review when considering an appeal from an order holding a party in contempt of court is narrow: We will reverse only upon a showing of an abuse of discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason.

---

[1] We note that Appellant has already served his 100-day jail sentence. However, the current appeal is not moot because Appellant "remains subject to the orders of support and a failure to comply with them might again subject him to contempt proceedings." ***Barrett v. Barrett***, 368 A.2d 616, 619 n.1 (Pa. 1977).

***Childress v. Bogosian***, 12 A.3d 448, 465 (Pa. Super. 2011) (citations omitted).

In civil contempt cases, it is common "for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period." ***Gunther v. Bolus***, 853 A.2d 1014, 1016 (Pa. Super. 2004).

This Court has explained:

"The use of the [civil contempt] power to enforce compliance is exercised with the objective of compelling performance and not inflicting punishment." ***Commonwealth ex rel. Beghian v. Beghian***, [184 A.2d 270, 272 (Pa. 1962)]. In accordance with this principle, [the Supreme Court has] indicated that a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt. . . .

\* \* \*

[W]here, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply. Since to condition a person's avoidance of or release from imprisonment on his performing acts beyond his power to perform is in effect to convert a coercive sentence into a penal one without the safeguards of criminal procedure, we are of the opinion that the stricter evidentiary standard of the criminal law should apply with regard to the issue of present ability.

***Barrett***, 368 A.2d at 620-21 (some citations omitted).

- 4 -

Therefore, before a trial court may impose a purge condition in a civil contempt case, it must determine, beyond a reasonable doubt, that the contemnor has the ability to comply. **Wetzel v. Suchanek**, 541 A.2d 761, 764 (Pa. Super. 1988); **see also Hyle v. Hyle**, 868 A.2d 601, 606 (Pa. Super. 2005) (noting that in a civil contempt proceeding, a purge must be fashioned in such a manner "which the alleged contemnor has the present ability to meet").

Here, at the contempt hearing, Appellant testified that he had been unemployed since he walked off the job site at Henry Molded on October 1, 2022, but that he was continuing to search for a job. N.T. Hr'g, 11/29/22, at 16. Appellant also testified that he did not have any monthly expenses and that he was living with his brother, who was financially supporting Appellant "entirely" until Appellant could find a job. **Id.** at 12, 16.

After the trial court found Appellant in civil contempt of the support order, it sentenced Appellant to a conditional prison sentence of 100 days with a purge amount of $2,000. **Id.** at 22. Thereafter, the following exchange occurred:

> [Appellant's counsel]: I would just preserve for the record that the purge amount is supposed to be set for what the Commonwealth has beyond a reasonable doubt proven that he can pay as he stands here. On behalf of my client, he doesn't have any money to pay so I believe the $2,000 would be very out of reach for him.
>
> THE COURT: And then he goes to jail. I have found as a fact that he could be working and he consciously chose not to. And if he were working, he would have more than enough money to pay that $2,000. In fact, I will go so far as to tell you that I believe he is going to pay that purge. I don't believe he is going to stay

- 5 -

in jail for that entire period of time. And if I'm wrong, I'll buy you a soda.

[Appellant's counsel]: Understood.

THE COURT: I think he has the $2,000. And he certainly, at a minimum, could have worked and he would have that $2,000 if he would have worked. And he has consciously chosen not to work. He has consciously chosen to do other things. And so I have done what I have done and I found what I found. We'll see if I'm right about him paying that $2,000.

*Id.* at 23-24.

In its Rule 1925(a) opinion, the trial court explained:

When [the trial court] imposed a purge of $2,000 upon [Appellant], we did so because we believed he possessed financial resources that he was not disclosing. [The trial court] believed that at the time of [its] sentence . . . that [Appellant] possesses the ability to earn, obtain, or even borrow enough funds to pay the $2,000 he owes as a purge. We base this belief upon eight (8) years of experience dealing with [Appellant]. At this point, if [Appellant] chooses to remain in prison rather than paying the $2,000 purge, that is a voluntary decision that he has the freedom to make. Such a decision should not be transformed into a "get out of jail free without paying support" card.

In addition to the above, [the trial court] needs to emphasize the obvious. [Appellant] could have worked at a legitimate job, either at Henry Molded [] or elsewhere. Had he worked at such a job, he would have been able to pay his child support obligation via wage attachment. [Appellant] chose not to work, at least not for a job for which wage attachment would be viable. As in the **Cochran**[2] case . . . [Appellant] made a voluntary financial choice not to work at a job from which child support would be deducted from his wages. He should not now be rewarded for that choice. More to the point, neither [Appellee] nor the parties' children

_____

[2] **Commonwealth ex rel. Cochran v. Cochran**, 489 A.2d 804 (Pa. Super. 1985) (*per curiam*).

- 6 -

should be victimized because of the voluntary choices made by [Appellant].

Trial Ct. Op. at 13-14 (some formatting altered).

Following our review of the record, we understand the trial court's frustration in dealing with Appellant, however, we are constrained to conclude that the trial court abused its discretion when it set a purge amount of $2,000. **See Childress**, 12 A.3d at 465. We observe that the record does not contain any information regarding the amount of funds that were available to Appellant, nor does the record reflect whether Appellant possessed any assets. Accordingly, we are constrained to conclude that there was insufficient evidence that Appellant had the present ability to pay the $2,000 purge amount at the time of the contempt hearing. **See Barrett**, 368 A.2d at 620-21.

For these reasons, we must vacate the trial court's order and remand for further proceedings. On remand, the trial court may receive additional evidence to assist it in determining the appropriate coercive conditions. However, the conditions must be such that the court is "convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." **Wetzel**, 541 A.2d at 764 (citations omitted).

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023